1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES RUTHERFORD,<br><br>                              Plaintiff,<br><br>v.<br><br>ARA LEBANESE GRILL, a business of unknown form; POLIS & SONS, INC., a California corporation; and DOES 1-10, inclusive,<br><br>                              Defendants. | Case No.:  18-CV-01497-AJB-WVG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S STATE LAW CAUSE OF ACTION**<br><br>**(Doc. No. 8)** |

Before the Court is Defendants Ara Lebanese Grill and Polis & Sons, Inc.'s (collectively referred to as "Defendants") motion to dismiss Plaintiff James Rutherford's ("Plaintiff") state law cause of action, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1367(c). (Doc. No. 8.) Plaintiff opposes the motion submitted by Defendants. (Doc. No. 10.) For the reasons discussed herein, the Court **GRANTS** Defendants' motion to dismiss.

## I.     BACKGROUND

Plaintiff suffers disabilities that qualify him as a disabled person under the Americans with Disabilities Act ("ADA") and possesses a Disabled Person Parking Placard. (Doc. No. 1 ¶ 1.) On or about April 27, 2018, Plaintiff went to Ara Lebanese Grill. (*Id.* ¶ 11.) Plaintiff encountered the following barriers outside the business: the accessible

1

parking space access aisle doubled as a curb ramp; the curb ramp exceeded the 2% slope and counter slope limit; and the curb ramp extended into an accessible parking space. (*Id.* ¶¶ 14–15.) Plaintiff states there are additional ADA violations inside the business:

> the centerline of the water closet is 20 inches away from the nearest wall in violation of Section 604.2 which requires a maximum distance of 18 inches; the paper towel dispenser is blocking access to the rear wall grab bar. The space between the grab bars and projecting objects above shall be 12 inches (305 mm) minimum per Section 609.3 in order to be able to properly access these safety devices; the restroom sink has the old style faucet handles which require tight twisting or turning of the wrist in violation of Section 309.4; the clear floor space at the interior front entrance door has less than the required 18 inches clearance on the latch side of the door as a large garbage receptacle is in that space; and there is no portion of the sales and service counter available to provide access to the disabled per Section 904.4.1.

(*Id.* ¶ 15.)

On June 29, 2018, Plaintiff filed a complaint with this Court. (Doc. No. 1.) Subsequently, on August 15, 2018, Defendants filed their motion to dismiss Plaintiff's state law cause of action. (Doc. No. 8.) Defendants also filed a request for judicial notice of Plaintiff's similar pending and settled cases, filed in both this District and the Central District of California. (Doc. No. 8-2.) Plaintiff filed a response in opposition to Defendants' motion to dismiss on August 29, 2018, (Doc. No. 10), and Defendants filed their reply on September 5, 2018, (Doc. No. 11).

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and internal quotation marks omitted). However, a complaint will survive a

18-CV-01497-AJB-WVG

motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## III.   DISCUSSION

A. Judicial Notice of Plaintiff's Similar Lawsuits

Under the Federal Rules of Evidence, courts may take judicial notice of a "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Specifically, matters of public record and judicial proceedings in other courts have been recognized as acceptable facts the court may judicially notice. *See Wheeler v. Premiere Credit of North America*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2015) (stating a federal appellate opinion was a matter of public record and was capable of accurate and ready determination, and therefore the court could take judicial notice of the opinion); *Rosales-Martinez v. Palmer*, 753 F.3d 890, 894 (9th Cir. 2014) (stating the court may take judicial notice of judicial proceedings in other courts) (citing *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006))); *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

The Court takes judicial notice of the existence of Plaintiff's similar lawsuits, as shown in Defendants' moving papers. (Doc. No. 8-2.) These lawsuits are accurately and

readily determinable from this district's PACER system, whose accuracy cannot reasonably be questioned. Defendants' moving papers indicate Plaintiff has filed 169 similar lawsuits (including the case at bar) between the dates of March 31, 2017, and August 13, 2018. (*Id.*) Accordingly, the Court **GRANTS** Defendants' request for judicial notice.

B. The Unruh Civil Rights Act

California's Unruh Civil Rights Act ("Unruh Act") provides in part that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). A violation of the federal Americans with Disabilities Act is also considered a violation of the Unruh Act in California. Cal. Civ. Code § 51(f).

Under the Unruh Act, a plaintiff is required to show that the defendant performed an intentional act or omission. *See Org. for the Advancement of Minorities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1129 (S.D. Cal. 2005). However, the ADA does not require a plaintiff to show intentional discrimination if a plaintiff's "Unruh Act violation is premised on an ADA violation." *Lentini v. Cal. Center for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004).

While the ADA only provides injunctive relief for plaintiffs, the Unruh Act allows the additional recovery of monetary damages. Cal. Civ. Code § 52(a). A plaintiff may recover actual damages for each Unruh Act violation "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)[.]" Cal. Civ. Code § 52(a). However, a plaintiff "need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

C. The Americans with Disabilities Act

The ADA bars discrimination against an individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A restaurant or other establishment that serves food or drink is a "public accommodation" under the ADA. 42 U.S.C. § 12181(7)(B).

Prevailing on an ADA claim requires a plaintiff to prove that (1) he or she has a disability, as defined under the ADA; (2) the defendant leases, owns, or operates a place of public accommodation; and (3) the defendant denied public accommodations to the plaintiff because of plaintiff's disability. 42 U.S.C. §§ 12181(a)–(b); *see Molski*, 481 F.3d at 730. Furthermore, a plaintiff is not required to show "intentional discrimination in order to make out a violation of the ADA." *Lentini*, 370 F.3d at 846. The available remedy under the ADA does not include recovery of damages, but instead provides only injunctive relief. *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1029 (S.D. Cal. 2017) (quoting *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1))).

D. Plaintiff's State Cause of Action Substantially Predominates over Plaintiff's ADA Federal Claim

The federal supplemental jurisdiction statute states that in any civil action where the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). The exercise of supplemental jurisdiction is mandatory unless prohibited by § 1367(b), or if one of the exceptions identified in § 1367(c) applies. Under § 1367(c), federal district courts may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). During an evaluation of § 1367(c), the Court considers various factors including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims . . . ." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997). In addition, the Court may decline to exercise supplemental jurisdiction "in the interests of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

If a state claim "substantially predominates" over a federal claim "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," then the Court may dismiss the state claims without prejudice. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966). In addition, there may be other reasons that are "independent of jurisdictional considerations . . . that would justify separating state and federal claims for trial." *Id.* at 727.

After careful consideration of both Plaintiff's and Defendants' arguments, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law cause of action and dismisses said action. Defendants argue that Plaintiff's state law cause of action under the Unruh Act substantially predominates over Plaintiff's ADA claim. The Court agrees for the following two reasons.

First, California's Unruh Act provides both monetary damages and injunctive relief for claimants in Plaintiff's position, whereas the ADA only provides injunctive relief. The Unruh Act provides a minimum award of $4,000 to a plaintiff for each Unruh Act offense. Cal. Civ. Code § 52(a).  Here, Plaintiff claims eight (8) violations and intends to perform a site inspection in the future to determine additional violations. (Doc. No. 1 ¶¶ 15–16.) If each of these allegations were to be proven, Plaintiff would be entitled to a minimum of $32,000 in actual damages. (*Id.* at 9.) In addition, Plaintiff requests statutory damages in the amount of $4,000 for each time Plaintiff visits an establishment that contains

architectural barriers that deny Plaintiff equal access to the premises. (*Id*.) Plaintiff also requests an additional $4,000 in deterrence damages. (*Id*.) The sheer volume of damages Plaintiff requests indicates that Plaintiff's primary focus is on recovering monetary damages.

Due to the existing circumstances, the Court finds that the monetary damages Plaintiff seeks substantially predominate over the injunctive relief available under the ADA. *Schutza*, 262 F. Supp. 3d at 1030; *see Org. for the Advancement of Minorities*, 406 F. Supp. 2d at 1131 (finding that statutory damages available under the Unruh Act substantially predominated over injunctive relief available under the ADA where the plaintiff alleged distinct violations that, if proven, would entitle him to an award of $56,000); *see also Molski v. Hitching Post I Rest., Inc.*, No. CV 04-1077SVWRNBX, 2005 WL 3952248, at *7 (C.D. Cal. May 25, 2005) (finding that statutory damages provided under the Unruh Act substantially predominated over injunctive relief available under the ADA where the plaintiff alleged 13 allegations that, if proven, would entitle plaintiff to an award of $52,000).

Second, Plaintiff's complaint relies on Defendants' intentional failure to remove barriers and intentional discrimination to support Plaintiff's claims. (Doc. No. 1 ¶¶ 26, 37.) Plaintiff states that "[g]iven the obvious and blatant violation alleged hereinabove, Plaintiff alleges, on information and belief, that the failure to remove these barriers was intentional . . . ." (*Id*. ¶ 26.) In addition, under Plaintiff's state law cause of action, Plaintiff declares "Defendant's actions constitute intentional discrimination against [him] on the basis of [his] individual disabilities." (*Id*. ¶ 37.) Between Plaintiff's Unruh Act and ADA claims, only the Unruh Act requires Plaintiff to show Defendant's intentional acts or omissions. Accordingly, Plaintiff "places intentionality at the heart of his claims for relief, which when combined with the amount of monetary relief sought, strongly suggests the Unruh Act claim substantially predominates." *Schutza*, 262 F. Supp. 3d at 1030 (citation omitted).

/ / /

/ / /

18-CV-01497-AJB-WVG

E.  Exceptional Circumstances and Compelling Reasons Exist to Warrant Not Exercising
    Supplemental Jurisdiction

In 2015, California's legislature codified its findings regarding information it received from the California Commission on Disability Access. Cal. Civ. Proc. § 425.55. These findings declare that "[p]rotection of the civil rights of persons with disabilities is of the utmost importance to [California], and private enforcement is the essential means of achieving that goal, as the law has been designed." Cal. Civ. Proc. § 425.55(a)(1). In addition, the legislature found that between the years of 2012 and 2014 "more than one-half, or 54 percent, of all construction-related accessibility complaints . . . were filed by two law firms. Forty-six percent of all [construction-related accessibility] complaints were filed by a total of 14 parties." Cal. Civ. Proc. § 425.55(a)(2). Thus, the legislature found that a small number of plaintiffs had filed a "disproportionately large number of the construction-related accessibility claims in the state[.]" *Id.* Moreover, the legislature's findings declare that "given these *special* and *unique* circumstances, the provisions of this section are warranted for this limited group of plaintiffs." Cal. Civ. Proc. § 425.55(a)(3) (emphasis added). The provisions under this section and section 425.50 (codified in 2012) provide additional pleading and court filing requirements for high-frequency litigants and were created in the interest of laying down "additional safeguards . . . so as to ensure that the claims are warranted." Cal. Civ. Proc. § 425.55(b). Put more simply, the provisions' purpose is to deter vexatious litigation and baseless claims. *See e.g.*, SB 1186, Chapter 383 § 24 (Ca. 2012).

When tracking Plaintiff's similar lawsuits, the Court recognizes an eerily similar pattern of litigants, much like the one California's legislature declared in California Civ. Proc. § 425.55(a)(2).  Plaintiff's 169 similar lawsuits (including the case at bar) filed between March 31, 2017, and August 13, 2018, were filed by a total of four (4) plaintiffs.[1] In addition, Plaintiff's 169 lawsuits are only spread between eight (8) legal representative

---

[1] Each lawsuit is filed by Plaintiff and a combination of one or more of the three other plaintiffs.

18-CV-01497-AJB-WVG

entities.[2] The disproportion between the number of lawsuits filed and the number of litigants is alarming and highlights the California legislature's concerns regarding high-frequency litigants.

When considering the values of judicial economy, convenience, fairness, and comity, the Court finds additional support in declining to exercise supplemental jurisdiction. First, the Court agrees with the Defendants' contention that Plaintiff is engaging in forum shopping. Just as in *Schutza*, "[i]t is unclear what advantage—other than avoiding state-imposed pleading requirements—Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act." *Schutza*, 262 F. Supp. 3d at 1031. Of the 52 cases Plaintiff has filed in this district alone, 20 have been closed within a few months of the filing date, without reaching a trial on the merits. The Court finds this "sue, settle, and move on to the next suit[ ]" pattern to be a compelling reason to decline supplemental jurisdiction. *Id*. at 1132 ("Because a legitimate function of the federal courts is to discourage forum shopping and California courts should interpret California law . . . compelling reasons exist to decline supplemental jurisdiction over plaintiff's state law claims."); *Org. for the Advancement of Minorities*, 406 F. Supp. 2d at 1131.

Second, it would be improper to allow Plaintiff to use the federal court system as a loophole to evade California's pleading requirements. The California legislature diagnosed a severe issue in the court system surrounding construction-related accessibility complaints. As a remedy, the legislature chose to implement heightened pleading requirements for a specific class of plaintiffs, also known as high-frequency litigants. In the interest of comity and in deference to the State of California's objective in "discouraging unverified disability discrimination claims," the Court declines to exercise supplemental jurisdiction over Plaintiff's state law cause of action. *Schutza* 262 F. Supp.

---

[2] The majority of Plaintiff's lawsuits (165 lawsuits) are filed solely by three legal groups: Manning Law, APC; The Law Offices of Babak Hashemi; and The Law Offices of Joseph R. Manning Jr.

18-CV-01497-AJB-WVG

3d at 1031; *see Hitching Post I Rest.*, 2005 WL 3952248 at *8–9 (finding comity to be a compelling reason for declining supplemental jurisdiction over state claims on the ground that California courts should have the opportunity to interpret state disability laws).

**IV.   CONCLUSION**

For the reasons discussed above, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law cause of action. Accordingly, the Court **DISMISSES** plaintiff's state law claim without prejudice.

**IT IS SO ORDERED**.

Dated:  March 5, 2019

Hon. Anthony J. Battaglia
United States District Judge

18-CV-01497-AJB-WVG